***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and oral arguments of the parties. The Full Commission finds that the appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with modifications, the Opinion and Award of Deputy Commissioner Rideout and enters the following Opinion and Award.
 *********** ISSUES
The issues in contention are: *Page 2 
1. Are Plaintiff's back problems causally related to the injury which occurred on May 30, 2008?
2. What temporary total disability benefits, if any, is Plaintiff entitled to?
3. What permanent partial disability benefits, if any, is Plaintiff entitled to?
4. What medical compensation, if any, is Plaintiff entitled to?
5. What, if any, further benefits is Plaintiff entitled to under the North Carolina Workers' Compensation Act?
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
2. The parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter. This case is subject to the North Carolina Workers' Compensation Act, and the parties are bound by and subject to the North Carolina Workers' Compensation Act.
3. An employment relationship existed between Plaintiff and Defendant at the time of injury on May 30, 2008, relevant to this claim.
4. Plaintiff's average weekly wage was $817.48, with a compensation rate of $545.02.
5. Plaintiff alleges he sustained an injury by accident to his back and right upper extremity arising out of and in the course of his employment with Defendant on May 30, 2008. *Page 3 
6. The compensability of the claim has been denied by Defendant by filing a Form 61.
7. The parties stipulated the following exhibits into evidence: Stipulated Exhibit 1, Pre-Trial Agreement; Stipulated Exhibit 2, Employee-Plaintiff's Medical Records; Stipulated Exhibit 3, Industrial Commission Forms and Filings; Stipulated Exhibit 4, Form 22, Statement of Days Worked and Earnings of Injured Employee; and Stipulated Exhibit 5, Employee's Initial Report of Injury.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing of this matter before the Deputy Commissioner, Plaintiff was 46 years old. Plaintiff was employed as a Probation Parole Community Corrections Officer in Rowan County, North Carolina. Plaintiff had been employed as a Probation Officer or Corrections Officer for the North Carolina Department of Corrections for approximately 22 years.
2. On May 30, 2008, Plaintiff and Ms. Lisa Bame, also a Probation Officer, were attempting to apprehend a probation violator in Rowan County. The probation violator was spotted on foot and began to run. Plaintiff began to chase the violator and chased him down a hill "full speed." At the bottom of the hill was a paved parking lot. When Plaintiff got to the parking lot off of the hill, he fell and slid approximately five to seven feet on his right side. The impact was so hard that Plaintiff was stunned and it took him a few minutes to regain composure. When he fell onto the pavement, he was holding his gun in his right hand and consequently he *Page 4 
severely scraped his right arm on the pavement. Several layers of skin were removed from his right arm from his wrist to his elbow. Plaintiff was bleeding a great deal from his right arm.
3. Plaintiff's supervisor, Russell Orrell, radioed Plaintiff to see how he and Ms. Bame were faring during the probation violator chase. Plaintiff informed Mr. Orrell that he had fallen while chasing the fleeing felon, but that he would have his wound cleaned when he returned to the office.
4. The probation violator was apprehended and Ms. Bame drove Plaintiff and the probation violator to the Magistrate's Office. The jail personnel cleaned Plaintiff's arm and bandaged it.
5. Plaintiff testified that due to the hard impact, he was extremely sore all over his body for the next few weeks. Specifically, the whole right side of his body, which hit first and then slid on the ground, was severely sore. After the soreness began to dissipate approximately ten (10) to fourteen (14) days later, the pain in his back, which radiated into his right leg, remained.
6. During the month of June 2008, he brought a heating pad to work due to his lumbar pain. Plaintiff had never used a heating pad at work prior to May 30, 2008. Also during the month of June 2008, he would place an ice pack on his back after work when he got home.
7. The pain in his back did not subside after the injury of May 30, 2008 and on the morning of July 5, 2008, Plaintiff could hardly move when he awoke. Plaintiff testified that his right leg felt as if someone had shot it and it was asleep. He presented to the Urgent Care at Poplar Tent on July 5, 2008 for a back injury. The notation from the visit of July 5, 2008 references that Plaintiff had fallen 2 weeks prior. Plaintiff testified that he knew that this had been noted and that it was an error because he did not inform anyone regarding the time frame of *Page 5 
his fall. He testified that he had communicated the mechanism of the fall of May 30, 2008 to the admitting nurse and his primary care provider, James Wilder, P.A., but that he did not communicate that he had injured himself two weeks prior. Plaintiff was diagnosed with a lumbar strain at the visit of July 5, 2008.
8. Prior to May 30, 2008, Plaintiff had never had the lumbar symptoms with radicular pain into his right leg that he had post-injury.
9. On July 7, 2008, Plaintiff presented to Mr. Wilder for follow-up of his lumbar condition. On July 8, 2008, Mr. Wilder ordered an MRI of Plaintiff's lumbar spine which revealed an annular tear with broad-based disc bulge at L3-L4 and a broad based disc bulge at L4-L5. Based upon the results of his MRI, Mr. Wilder referred Plaintiff to Dr. Andrew Sumich of Carolina Neurosurgery and Spine.
10. Plaintiff presented to Dr. Sumich on July 10, 2008 and it was noted that he presented for right-sided back and leg pain at the recommendation of Mr. Wilder. Dr. Sumich wrote Plaintiff out of work beginning July 10, 2008. Dr. Sumich recommended and performed right L5-S1 transforaminal epidural steroid injections on July 15, 2008 and August 5, 2008. Dr. Sumich assigned light duty restrictions beginning July 21, 2008. When the first two (2) injections at L5-S1 failed to provide any relief, Dr. Sumich performed a bilateral epidural steroid injection at S1 on September 30, 2008. Dr. Sumich continued to assign light duty work restrictions to Plaintiff through his final visit with him on October 15, 2008.
11. Plaintiff turned in the light duty work notes by Dr. Sumich to Rosemary Cox, the Judicial Manager of District 19-C. From July 21, 2008 to January 2009, neither Plaintiff nor Ms. Cox received any indication from the State of North Carolina that there was a light duty job available. He explained that both he and Ms. Cox called an individual in Raleigh, North *Page 6 
Carolina on many occasions to inquire about the possibility of Plaintiff returning to a light duty position.
12. On July 30, 2008, Plaintiff completed an Employee's Initial Report of Injury. Plaintiff described in his hand writing that he was injured when he was
 chasing fleeing felon through woods into open area and fell upon hitting level ground after running down hill. Was holding gun in right hand. Right arm was injured from wrist almost to elbow. Body hit ground hard enough to stun me. Stood and had to take breaths to regain composure. Arm cleaned in car on way to jail. Reported to CPPO and JDM.
Plaintiff checked that he had injured his right side, his back, and right arm during the fall. The Employee's Initial Report of Injury was also signed by Plaintiff's supervisor, Russell Orrell.
13. A Form 18 and Form 19 were completed on July 30, 2008. On August 23, 2008, Defendant filed a Form 61.
14. Plaintiff returned to Mr. Wilder on November 4, 2008 and it was noted that he had no improvement. Due to his lack of improvement, Mr. Wilder referred Plaintiff to Dr. Ranjan S. Roy, a neurosurgeon with Piedmont Neurosurgery Spine. Plaintiff presented to Dr. Roy on December 26, 2008.
15. Plaintiff had previously treated with Dr. Roy in 2003 for a cervical condition that had fully resolved. In 2003, Plaintiff had not complained of any lumbar pain, and his cervical condition of 2003 was not work related. Plaintiff was able to return to full duty work after his neck surgery in 2003.
16. During Plaintiff's visit with Dr. Roy on December 26, 2008, Dr. Roy noted that Plaintiff presented with back and right leg pain that began after a fall at his place of employment on May 30, 2008. Dr. Roy performed a straight raise test, which was positive on the right side reproducing right leg pain. Based upon the results of the physical examination and review of the *Page 7 
July 8, 2008 MRI, Dr. Roy diagnosed Plaintiff as having a surgical problem and recommended a right-sided L3-L5 decompression and discectomy.
17. Dr. Roy performed the right-sided L3-L5 decompression and discectomy on March 13, 2009. Plaintiff explained that the reason for the delay in the procedure from December 26, 2008, when Dr. Roy recommended the surgery, to the performance of it on March 13, 2009, was due to health insurance coverage issues. Plaintiff testified that his lumbar symptoms have improved post-operatively; however, he still experiences discomfort and pain.
18. The issue was raised by Defendant at the hearing before the deputy commissioner regarding an incident which occurred on July 4, 2008. Plaintiff testified that on July 4, 2008, as he was operating his riding lawnmower, he stepped off the lawnmower to pick up a rock to throw into the woods. When he stepped off, he stepped into a hole. Plaintiff testified that he did not injure his right leg or his back during the incident of July 4, 2008. He reiterated that during the entire month of June 2008, his back symptoms had not resolved and progressed to the point on July 5, 2008 when he presented to the urgent care clinic. He explained that the had a cushion roll and heating pad in his chair at work the entire month of June 2008 hoping that those measures would relieve his symptoms.
19. Vaughn Hatley, a Probation Surveillance Corrections Officer in Rowan County, has been a surveillance officer for the past 11 years and has known Plaintiff for approximately 20 years. Mr. Hatley and Plaintiff work in the same building. Mr. Hatley remembered seeing Plaintiff on May 30, 2008 with a bloody right arm. He explained that he recalled the mechanism of the fall because he "rode Plaintiff hard" about letting a violator get away and falling. He explained that in June 2008, Plaintiff "slowed up" and appeared to be different than he was prior to May 30, 2008. Mr. Hatley testified that Plaintiff was not the "usual jolly Bobby" and *Page 8 
mentioned that his back was hurting him in June 2008. Mr. Hatley testified that it was not characteristic for Plaintiff to complain about any physical ailments.
20. Philip Holshouser, an employee with the Department of Corrections / Division of Prisons, has known Plaintiff for approximately 30 years. Mr. Holshouser testified that after May 30, 2008, he went to visit Plaintiff at work and saw his heating pad in his chair. Mr. Holshouser testified that he asked him why he had a heating pad and Plaintiff explained the events of May 30, 2008. Mr. Holshouser testified that Plaintiff explained that he had fallen hard while chasing a parole violator.
21. Lisa Bame, a Probation Parole Community Corrections Officer in Rowan County, explained that on May 30, 2008, she asked Plaintiff if he would accompany her on the search for the parole violator. She explained that they spotted the parole violator and Plaintiff began to run after him. The parole violator and Plaintiff were running behind a home and Ms. Bame did not see when Plaintiff fell. She did see Plaintiff immediately after his fall and described that he was out of breath and his right arm was bleeding "a lot." Ms. Bame testified that it appeared to her that Plaintiff had fallen hard because Plaintiff appeared "shook up." Ms. Bame asked Plaintiff if he was "ok" and he said that he was fine and would have his arm cleaned up at the jail when they returned. Other than the first few hours after the incident of May 30, 2008, she did not ask Plaintiff if he was having any physical problems. Regarding the incident of July 4, 2008, she testified that she had heard Plaintiff state that he had stepped in a hole while mowing the lawn, however, that she did not recall him ever stating that he hurt his back or leg in that incident.
22. Robert William Fisher, a Chief Probation Parole Community Corrections Officer in Rowan County, works in the same building as Plaintiff. He testified that while he did not speak to Plaintiff on May 30, 2008, he did recall hearing about the events of May 30, 2008 and *Page 9 
noticed Plaintiff wearing a short sleeve shirt with a bandage. He testified that on the morning of July 7, 2008, because Plaintiff's supervisor was out of the office, Plaintiff reported to him that he might have a doctor's appointment that day because he had stepped on a stump in a hole.
23. Russell Glenn Orrell, a Chief Probation Parole Community Corrections Officer in Rowan County, is Plaintiff's direct supervisor. Mr. Orrell testified that he was personally aware that Plaintiff and Ms. Bame were on a chase on May 30, 2008. He had radioed Plaintiff to make sure that he and Ms. Bame were fine during the pursuit. Plaintiff informed Mr. Orrell that he had fallen while chasing the parole violator, had scraped his arm, was out of breath, and was headed to the Magistrate's Office where he was going to have his arm bandaged. Mr. Orrell later saw Plaintiff with a bandage on his right arm. Mr. Orrell did not instruct Plaintiff to report to Rosemary Cox, the Judicial District Manager, or to complete any workers' compensation forms because Plaintiff informed Mr. Orrell he was fine.
24. Regarding the incident of July 4, 2008, Mr. Orrell was on vacation during that week but when he returned, he called Plaintiff and asked him why he was out of work. Mr. Orrell testified that Plaintiff informed him that he stepped in a hole, injuring his back. Mr. Orrell executed the Employee's Initial Report of Injury form on July 30, 2008. Mr. Orrell explained that he never disputed what Plaintiff wrote on that form nor did he ever state to Plaintiff that was not what Plaintiff had informed him as being the mechanism of injury to his back.
25. Rosemary Cox, the Judicial District Manager for Judicial District 19-C was called to testify as a lay witness by Defendant at the hearing. Ms. Cox's job duties include the completion of workers' compensation claim forms when an employee is initially injured. Ms. Cox recalled that on May 30, 2008 Mr. Orrell had informed her that Plaintiff had fallen in pursuit of a parole violator. When Plaintiff returned to the office on May 30, 2008, he explained to Ms. *Page 10 
Cox that he was running down a hill and when he hit the pavement, he fell onto the pavement, which knocked the breath out of him. Ms. Cox testified that she observed Plaintiff's right arm on May 30, 2008 and it appeared to her that several layers of skin had been taken off during the fall. She also specifically recalled that Plaintiff told her that he fell so hard that he had to put his hands on his knees before he could get his breath back. On July 29, 2008, Plaintiff called Ms. Cox and informed her that he wanted to file a workers' compensation claim regarding his injury of May 30, 2008. Ms. Cox testified that Plaintiff could file a workers' compensation claim, but that she would have to inform the insurance carrier that on May 30, 2008, Plaintiff only complained to her about his right arm hurting. In response, Ms. Cox testified that Plaintiff told her that was fine.
26. Dr. Roy opined to a reasonable degree of medical certainty that the mechanism of the May 30, 2008 injury described would, more likely than not, have caused an aggravation of Plaintiff's lumbar condition, rendering it symptomatic.
27. Based upon a reasonable degree of medical certainty, Dr. Roy opined that the exacerbation of Plaintiff's lumbar condition on May 30, 2008, led to his need for the surgery which he performed on March 13, 2009.
28. Dr. Roy opined that the treatment he provided to Plaintiff was reasonably necessary to affect a cure and/or give relief to the injuries he sustained in the accident of May 30, 2008.
29. Plaintiff was written out of work by Mr. Wilder from July 5, 2008 to his referral of him to Dr. Sumich on July 10, 2008. Dr. Sumich wrote Plaintiff completely out of work from July 10, 2008 to July 21, 2009, when Dr. Sumich assigned light duty work and continued those restrictions until Plaintiff was evaluated by Dr. Roy. Plaintiff attempted to perform light duty *Page 11 
work with Defendant; however, he never received a response from Defendant regarding a light duty position. Dr. Roy wrote Plaintiff out of work from December 26, 2008 to the present.
30. The Full Commission finds that the greater weight of the evidence establishes that Plaintiff's lumbar condition for which he underwent surgery on March 13, 2009, is causally related to his work injury of May 30, 2008.
31. At the time of the hearing before the Deputy Commissioner, Plaintiff had not yet been placed at maximum medical improvement or received a permanent partial disability rating.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On May 30, 2008 Plaintiff suffered an injury by accident to his back arising out of and in the course of his employment with Defendant. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase,Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994).
2. As a probation officer, plaintiff is entitled to salary continuation in lieu of compensation for the first two years of incapacity provided that his employment in the position continues. N.C. Gen. Stat. § 143-166.13; N.C. Gen. Stat. § 143-166.14; N.C. Gen. Stat. § 143-166.16.
3. As a result of Plaintiff's compensable injury by accident to his lumbar back, Plaintiff is entitled to temporary total disability at a compensation rate of $545.02 beginning July 5, 2008 and continuing until Plaintiff returns to work full-time or until further Order of the Commission. N.C. Gen. Stat. § 97-29. *Page 12 
4. Plaintiff is entitled to receive medical treatment relating to his lumbar condition, so long as such medical treatment would provide relief, relieve pain, and lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. At the time of the hearing before the Deputy Commissioner, Plaintiff had not yet been placed at maximum medical improvement or received a permanent partial disability rating. As such, issues regarding further indemnity benefits due to plaintiff should be reserved pending the election of benefits by plaintiff as such time as Plaintiff reaches maximum medical improvement. N.C. Gen. Stat. §§ 97-29 and 97-31.
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability benefits to Plaintiff from July 5, 2008 in the amount of $545.02 and continuing until Plaintiff returns to work full-time or until further Order of the Industrial Commission, subject to the attorneys' fee awarded in Paragraph 4 of this AWARD.
2. Defendant shall pay all reasonable and necessary medical expenses which tend to effect a cure, provide relief, or lessen the period of Plaintiff's disability, incurred or to be incurred by Plaintiff for treatment of his back condition, specifically but not limited to the treatment rendered by Dr. Ranjan Roy.
3. Dr. Ranjan Roy shall be designated as Plaintiff's authorized treating physician.
4. A reasonable attorney's fee of twenty-five (25%) percent of the compensation due Plaintiff under Paragraph 1 of this AWARD is approved for Plaintiff's counsel. *Page 13 
5. Defendant shall pay the costs.
This the 30th day of March, 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1